County Board of Elections. Good morning, judges. The point raised on appeal is that the uniquely punitive structure of the New York election law is unconstitutional, whether it's unconstitutional on its face or unconstitutional as applied. Unless the Court has other questions, I'd like to narrowly focus today on two points. One, the substitution mechanism in the law, in not permitting the plaintiff and the appellants to take advantage of it. There is absolutely no plausible government justification or interest in that. And then, second, that there is explicitly unequal treatment both in the law itself and in the implementation of the law by the Board of Elections. What's the basis for the unequal treatment claim? So... You have established party candidates, and then you have non-party candidates, right, and who are being, who are petitioned, and then an acknowledged acceptance is required as of now. But the other ones, it seems to me, and haven't we held this also in Wallis, United Party against Wallis, that that's, it's okay to have that distinction because they're not similarly situated. So I think, to two points, let's talk about the unequal treatment in the law itself. I don't think that the Unity Party Court considered the Anderson footnote, and I think that's footnote 16, but I could be wrong, that essentially says that minor party status is a protected status. And it is very clear from the millstone analysis that Unity Party engages   It's a protected status. It's a protected status. It's a particularly when compared to the dissent in Anderson. But the Unity Party decision says the impact of 6146 conceitedly falls more heavily on independent and minor party candidates than on major party candidates. It was looking for that unequal treatment, but it said there were interests that the context of the nonparties versus the established parties, and it found those imposed a very minor burden, and they were served. I have difficulty. You cast in your brief this being presenting a kind of an evidentiary issue, but I have difficulty seeing it that way. Maybe you could address that further. Absolutely, Judge Kearney. So I think there are two points being blended there. There is the equal protection point and the Anderson verdict point. To the equal protection point, I think what the Supreme Court said is this is not a protected status like race. And that's the opposite of what the Supreme Court said in Anderson, and it's the opposite of what this Court has since said in Green Party, in Shulls, and in any number of other cases that addressed unequal treatment. It's still purported to apply the weighing of the kinds of considerations that the Anderson court set out. Isn't that right? So Anderson has two points as I read the case. And the first point is about the burden on the right of access to the ballot. And that itself can trigger scrutiny. There is a separate and independent trigger for discrimination on the basis of party status. And so I think there is really no question, if you look at the analysis in Anderson, or I'm sorry, the analysis in Unity Party, whether it's engaged in the same kind of analysis that the Anderson court dictated that courts need to engage in. And I think to that point, it's – I have never seen Unity Party cited for its holding on equal protection. And I think the reason for that is because its holding on equal protection is just wrong. And it's not what this Court has followed since then. Kagan. So you're saying we should overturn Unity Party? I don't think that overturning it is necessary, because I don't think that the equal protection piece is necessary to its holding. I think Unity Party itself can simply be stated, if you tell somebody exactly what to do, that's not a burden, because they sent a letter in Unity Party that says, in fact, what you have to do is under this statute, name the statute, you have to file a notarized statement within such a number of days, which is not what the letters did here, and it's not what the plaintiff appellants knew to do. But the law was on the books. And I think to that point, courts have routinely held that the election law is complicated and compliance with it is not. The criminal law is pretty complicated, too, but we expect people to understand that. And I think that's the difference between Anderson Burdick as a form of analysis and kind of the conventional criminal law analysis. But your clients have, in fact, filed such acceptances before. Maybe not all of them, but many of them. Most of them. Right? Right? And to — They're not your clients, but some of the situated people that they filed, there were a couple, weren't there, that filed acknowledged acceptances? And so I think to that point, if they knew that they needed to file it, they obviously would have. They don't — my clients don't gain anything by paying me to be here and argue before this Court. There's no game that they're playing. And there's a — But they had — but I don't — I mean, it seems to me reasonable to infer, A, from the fact that this is a published law, unlike in Hirschfeld, where there was a kind of private notice that was not published and available. And second, your clients had filed such acceptances in prior circumstances. So how can you really tell us that they were not aware? So in Hirschfeld, the law was published. The law was on the books. The question that the Court analyzed was whether, if you walked into the Board of Elections, would you see the law? No. The Board offered into evidence a copy of the independent nominating rules, which was claimed to be available to the public. But the only thing they showed to be available was copies were present in the room where petitioners were filed. There's no citation there that they were published. The way this law was clearly — and everyone acknowledges — was published. So I think that that's wrong because the law was passed by the legislature. The law has not changed since Unity Party and since Hirschfeld. The law has been on the books. It has been available in law libraries since then. The question in Hirschfeld was what would happen if you walked into the board? And to that point, I still think if you walk into the board, they won't tell you about the certificate of acceptance requirement because Rona Klopman walked into the board and they didn't tell her about it. But your client's running for public office. They've filed such acceptances before. The law is published. It's not hidden. And there's just nothing hidden about it. So I don't understand why they would not be charged with knowledge. You don't rely on clerks working administratively in a public office for advice about legal matters. Then that is the same question in Hirschfeld because the candidate in Hirschfeld would have equally been charged with knowledge of the law. I have to disagree with your reading of Hirschfeld because I don't see any citation to publish New York law in the two pages of the Hirschfeld decision. I think we have in the record is the oral argument in Hirschfeld. And I believe the Board of Elections points out in that oral argument that it is published and it is the law of the state of New York. Well, if the court didn't rely on that, though, in finding that, in reaching a different kind of conclusion, I'm not sure we should. But in any event, I've taken up some of your time. Is there anything else you'd like to say before you close? So, yeah, if I may, what I'd like to point out is errors are ordinary. People make mistakes all the time. The mistake here was not realizing that you needed to file this particular form in this particular context. And there is absolutely no state interest that could possibly justify refusing to allow substitution. So if you narrowly focus on substitution, there is no anti-fraud justification for refusing substitution and there is absolutely no ballot overcrowding justification for refusing to allow substitution. And on substitution, the New York court has said there's no vacancy. If you don't have a vacancy, you can't substitute. What should we make of the New York court's interpretation of New York law? I think that that's the same thing that the Supreme Court addressed in O'Brien at the end, and we quoted this at the beginning of our reply brief, which is that is a restrictive interpretation of New York law and that imposes a burden. And once you get to a burden, you have to go through both stages of the Anderson-Burdick analysis, that is, analyzing the strength of the burden and whether the state interest makes that burden necessary. And there just is no state interest in this idea that, oh, no, there's no vacancy here when you fail to file a certificate of acceptance. But if you decline, you do get a vacancy. If there are substantive defects in your petition, for example, not being in the ‑‑ living in the state at all, you get a vacancy. But, I mean, I think that the entire system is incoherent in a way that Anderson-Burdick forbids. All right. Thank you very much. I think we have the argument. We'll hear from Mr. Fershpan. May it please the court. My name is Daniel Fershpan. I'm an assistant county attorney for the county of Suffolk. I represent the defendant's appellees in this matter. This case does not present a legitimate access to the ballot challenge. Indeed, none of the appellants have been denied access to the ballot, as all but one of them will, in fact, appear on the ballot this November general election under multiple other party lines for the offices that they seek. And the one appellant who will not appear on the ballot, as stated in the unity party decision, his supporters can utilize the write‑in method for supporting his candidacy. This court in unity party and in subsequent Second Circuit and Supreme Court decisions, including the Timmins v. Twin Cities area case referred to by Judge Matsumoto below, have all clearly held that where there's a lesser burden, such as the requirement that independent bodies and persons who are nominated by a party of which he or she is not a member of file a notarized letter of acceptance, there's a less exacting review, and a state's important regulatory interest will be enough to justify these reasonable nondiscriminatory restrictions. Now, this burden of having to file a notarized acceptance is clearly trivial, as explained in the unity party decision. You would agree, though, that it falls more heavily on independent bodies than it does on established parties, this requirement, doesn't it? That's what the unity party court stated. But there's a distinction to be drawn between them, right? Well, as you stated, Your Honor, earlier, the party, they're not so. What about acceptance if it's a nomination by a major party that nominates a candidate? Right. They're not similarly situated. A major party candidate accepts the nomination by way of a party convention or through a primary. Independent bodies. They have to be a member of the party to participate in the primary? I believe so, yes. So this rule basically says anybody who is not a member of the party for which they are being put forward as a candidate, they have to then file a certificate saying I'm willing to do it, right? That's exactly correct. That's to avoid the situation where candidates, prominent candidates, might be drafted by signature to take a spot on the ballot. That's exactly right. And they don't want to be. It's a guard. This tool is a guard against fraudulent acceptances and fraudulent declinations where perhaps being nominated by a party that you weren't aware of or declining a nomination could have adverse consequences. Associating with a party could have adverse consequences. You're not saying that the plaintiffs here were attempting to engage in fraud, but the purpose of the statute is to prevent fraud, right? Right. That's exactly what we're saying. That's the purpose of the statute. That's the reason for the enactment of the statute is to guard against these fraudulent declinations and fraudulent acceptances. And as Judge Matsumoto noted, one of the not unnamed appellants, Stephen Lynch, who was nominated by the E.H. Fusion Party, declined his nomination because he wanted to avoid an adverse consequence of associating with the E.H. Fusion Party. That's the purpose of the enactment of this statute. And really the requirement is quite trivial. As we've noted before, all but one of the appellants had previously complied with this certificate of acceptance requirement in the same election cycle for the same offices that they seek, for numerous other parties that they were not members of. One of the appellants, David Gruber, sent an e-mail to nearly all of the appellants advising them of this requirement and even sending them a form. Judge Matsumoto below noted that the information was sent with the appellant as well in advance as they could have complied. Oh, yeah, it was sent in April of ‑‑ I think April 4th I think was the date. And these nominating petitions were filed May 28th. I'm sorry, May 21st and May 28th. September 31st of May. Yeah. So more than a month in advance. So they were well aware of the requirement. And they complied with it. They actually complied with the requirement. And as Judge Matsumoto noted below, the information regarding this requirement to file an acknowledged acceptance is easily accessible through the New York State Board of Elections website and the Suffolk County Board of Elections website. And once again, they are not prevented from accessing the ballot. They're not prevented from being on the ballot. All of them will be on the ballot. And their supporters can still write in their names. Do you agree that it was the same law at issue in Hirschfeld? It was the same law at issue in Hirschfeld, yeah. It was. Because I noted specifically when I read Hirschfeld that it made no reference to state law. So I wondered. My understanding is that it's the same law in question. I think one of the issues in Hirschfeld is that the plaintiff in that case filed his nominating petition, and the board never sent a notice advising or the board invalidated the petition, I think, the next day for failing to file a notarized acceptance, for failing to file any acceptance whatsoever. And the court held that that was a burden because it never afforded him an opportunity to file the acceptance. It's an example of a non-rigorous, of applying some equitable considerations. Right. There has to be a reasonable time. There has to be a time, any time whatsoever, which wasn't provided at all in Hirschfeld for a party to file an acceptance. Here the board sent, I think, afforded almost 10 days. They sent a letter on May 21st saying you have until May 31st to accept or decline the nomination. And so with respect to the certificate, I'm sorry, the substitution mechanism in the election law, which is Section 6-148, this is a law that applies equally among major and minor political parties. The law is very clear that a substitution can be made as long as there is a vacancy on a valid petition under circumstances including death, disqualification, or declination. The law is very clear, and it applies across the board, and we cite to a string of cases on page 37 of our brief where even major parties, if they fail to properly file a petition, they can't substitute a candidate on that petition because there was no vacancy created. And even so, in all those cases, and in this case, you can't substitute the same candidate on the same petition. So the substitution mechanism is inapplicable in this case for those reasons. If the Court has any other questions. Roberts. Was that preserved, do you think? I don't think so, Your Honor. As we mentioned in our brief, that was an argument not advanced to the Court below. It was really the only argument raised concerning the certificate of the substitution mechanism was whether under the election law the Board properly or improperly invalidated their substitutions. All right. Thank you. I think we have the argument. Thank you, Your Honor. We'll hear rebuttal. So I think I'll start at the end and move backwards. We absolutely raised the argument below in our reply. Substitution. On substitution. I cited exactly where we said that there are. You tucked it away in a footnote that was really talking about a different point. I mean, maybe it's technically preserved, but it wasn't really the focus of your argument below. Would you agree? So I think we attacked it from a couple angles below. The other angle was we talked a lot below about what are the least restrictive alternatives and pointed out kind of the litany of ways you could implement this, including the way that it was implemented in Unity Party, which is by just telling the candidate what they need to do instead of hiding the ball. But I think we very much said, look, you could let somebody substitute. You could let somebody substitute in this situation. And I think we were very clear. Let somebody substitute. Meaning? Let the person who didn't comply with the certificate of acceptance substitute themselves in. Yes, absolutely. Which means just don't apply the certificate of – I mean, isn't that just another way of saying that you're not going to apply the certificate of acceptance? I don't think it is. And I think the distinction there is about what the government interest is. Well, are there other cases in which people have been allowed to substitute themselves in? Yes. So in New York, we have let people substitute. What the cases seem to say, and they're inconsistent, but the cases seem to say that when you substitute – or, I'm sorry, when you decline, absolutely no vacancy can be created. But when you substitute – or, I'm sorry, when you don't decline, there can be a vacancy created. And so those are distinguishable. In other states, people are allowed under identical laws to substitute for themselves because, in effect, it's using the law's structure to create an equitable remedy. And what I want to make sure that we do get to is something about the unequal treatment. Because the guidebook provided by the Board of Elections explicitly states that they give what they call legal advice to the major parties. And they don't give that to the minor parties, who are the people, as this court pointed out, in any number of cases, including Shull's, those are the people in the government. And as the Southern District talked about in Farrell, this is a situation in which we would want the Board of Elections to be acting in a way where it provides more access to the ballot, not less. And is not acting as an adversary, but rather acting as somebody attempting to provide more access. Okay, thank you. I think we have the arguments. We'll reserve decision, though I understand you need a decision wrap.